Matthew BOBICH, Dennis Millard, individually and as owners in M W of A, Inc., a/k/a MWA of Alaska, and partners in Dimond Self Storage, partnership; Diane Black–Smith, David Richards, Betty Gordon, individually and as partners for Dimond Self Storage also known as Dimond Mini–Storage partnership, Appellants and Cross–Appellees,

v.

Sharon STEWART and Jimmie D. Stewart, Appellees and Cross–Appellants.

Nos. S–4517, S–4628.

Supreme Court of Alaska.

Dec. 31, 1992.

Rehearing Denied Feb. 22, 1993.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellants and cross–appellees.

Kenneth W. Legacki, P.C., Anchorage, for appellees and cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal concerns an action by Jimmie Stewart and Sharon Stewart to recover unpaid overtime compensation and damages from their employer, Dimond Mini–Storage. At trial, the jury found that Dimond Mini–Storage was an employer of four or more employees and thus owed the Stewarts overtime pay under the Alaska Wage and Hour Act (hereinafter AWHA), AS 23.10.-050–.150. The jury awarded compensatory and liquidated damages to the Stewarts. In addition, the trial court awarded the Stewarts both prejudgment interest and attorney's fees. Dimond Mini–Storage appeals, and the Stewarts cross-appeal, on a wide range of issues. We affirm.

## I. FACTS AND PROCEEDINGS

From June 1987 through the summer of 1988, Dimond Mini–Storage, a self-storage

facility, employed Jimmie Stewart and Sharon Stewart to perform the facility's day-to-day tasks. Except for an occasional part-time worker, the Stewarts were the only employees at the mini-storage site itself.

Much of the work involved in running Dimond Mini–Storage occurred off-site. Matthew Bobich was a general partner in the partnership that owned Dimond Mini–Storage. He was also a real estate agent at Alaskan Real Estate. Generally, Bobich oversaw the Stewarts' activities and made long-range managerial decisions. For this work he received a $14,400 management fee, which the partnership paid to Alaskan Real Estate. In addition, an employee at Alaskan handled the bookkeeping, the preparation of monthly reports, the payment of some bills, and the reception of some of the telephone communications for Dimond Mini–Storage. The business address of Dimond Mini–Storage was that of Alaskan Real Estate.

In November 1988, the Stewarts filed a complaint alleging that Dimond Mini–Storage, in violation of the AWHA, failed to pay actual or overtime compensation for excess hours that the Stewarts worked. At trial, Bobich moved for a directed verdict, arguing, *inter alia*, that Dimond Mini–Storage had only three employees and was thus exempt from the AWHA's overtime provisions.[1] The court denied this motion. Bobich also objected to a number of the instructions to the jury. In a special

verdict, the jury found Dimond Mini–Storage to be an employer of four or more people, and awarded damages for unpaid overtime in the amount of $23,402 for Jimmie Stewart and $21,731 for Sharon Stewart. In cases involving unpaid overtime, the AWHA instructs the court to award both the overtime due and the same amount in liquidated damages. AS 23.10.-110(a). The trial court did so. It also awarded $11,672.12 in prejudgment interest on the award of compensatory damages. Bobich moved for a judgment notwithstanding the verdict, but the court denied this motion. The trial court also awarded the Stewarts $52,068 in attorney's fees.

This appeal followed.

## II. DISCUSSION

### A. Introduction

The central issue of this appeal is whether any more than three employees worked at Dimond Mini–Storage at any one time. Under an AWHA exemption, an employer who employs less than four employees need not pay them overtime. *See* AS 23.-10.060(d)(1) (1984).[2] Bobich contends that Dimond Mini–Storage employed only three employees: the Stewarts, and one part-time employee.[3] The Stewarts, on the other hand, argue that Bobich and the bookkeeper at Alaskan Real Estate should also be counted as employees of Dimond Mini–Storage.[4] The parties also dispute the awards of prejudgment interest and attorney's fees.

---

**1.** Alaska Statute 23.10.060(d)(1) (1984) states that the AWHA's requirements for overtime pay do not apply to "an employee employed by an employer employing less than four employees in the regular course of business."

**2.** Since the cause of action accrued, AS 23.10.-060 has been amended, and the structure and paragraph scheme of the statute has been reorganized. However, the language of the exemption has not been changed. *See* AS 23.10.-060(d)(1) (1990).

**3.** For the purposes of establishing the number of employees that an employer has under AS 23.10.060(d)(1), "all part-time employees will be counted regardless of the number of days or hours worked." 8 AAC 15.140 (1991).

**4.** Before trial, Bobich moved for summary judgment on several issues, including the number of employees at Dimond Mini–Storage. The Stewarts opposed Bobich's motion and filed a cross-motion for summary judgment. They argued that AS 23.10.060(d)(1) was void, either because the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, preempted it, or because the Alaska provision was vague. The Stewarts also sought to apply either of two FLSA doctrines—joint employment or enterprise liability—to the AWHA, in an effort to combine Dimond Mini–Storage with another establishment in which Bobich held an ownership interest and thus to create one larger employer with four or more employees.

Bobich appeals the denial of his motion for summary judgment on these issues. In addi-

## B. The Number of Employees at Dimond Mini–Storage

### 1. *The activities of Bobich or the bookkeeper at Alaskan Real Estate make these individuals employees of Dimond Mini–Storage.*

Bobich argues that the partnership independently contracted with Alaskan Real Estate to manage the mini-storage property. Therefore, Bobich and the bookkeeper were employees of Alaskan, not Dimond Mini–Storage. He stresses that the fee for managing the facility was paid to Alaskan Real Estate, not directly to himself, and that he received fees for managing property for clients other than the mini-storage. Twice Bobich challenged the existence of a jury question on this issue, once through a motion for a directed verdict, and once through a motion for judgment notwithstanding the verdict. Bobich now appeals the denial of both motions.

█ When reviewing a denial of a motion for either a directed verdict or a judgment notwithstanding the verdict, the court must decide whether the evidence, when examined in the light most favorable to the nonmoving party, is such that reasonable persons could not differ in their judgment. *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978). Unless reasonable jurors could not differ, we will affirm the jury's verdict. *Blackford v. Taggart*, 672 P.2d 888, 890 (Alaska 1983).

█ We find that the Stewarts presented sufficient evidence to raise a question on which reasonable jurors could differ, and therefore we affirm the jury's verdict. When determining whether a party is an employee or an independent contractor, the finder of fact may rely on several guidelines, which include:

1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Jeffcoat v. State, Dep't of Labor*, 732 P.2d 1073, 1075–76 (Alaska 1987) (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir.1985), *cert. denied*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985)). Under this standard, a reasonable jury could conclude that Bobich and the bookkeeper were employees of Dimond Mini–Storage, and could reject the argument that Alaskan Real Estate acted in the capacity of an independent contractor. First, a relationship between an employer and an independent contractor is generally a short-term one, but the services of Bobich and the bookkeeper appear to be of a permanent nature. Moreover, Bobich received a flat management fee for his services, regardless of whether Dimond Mini–Storage turned a profit. Finally, both overall management activities and clerical tasks such as bookkeeping are integral parts of a business. Managers and bookkeepers are essential to a business's operations in a way that a contractor hired to repaint the office walls is not. Therefore, we conclude that the special verdict was not in error.[5]

### 2. *Bobich's status as a partner in Dimond Mini–Storage does not exclude him from employee status.*

█ In addition, Bobich argues that because he is a partner in Dimond Mini–

---

tion, a number of the jury instructions to which Bobich objects also involve questions of the FLSA's application. However, when deciding the outcome of the case, the jury applied the AWHA alone. Because we conclude that under the AWHA alone, the jury finding that Dimond Mini–Storage had four or more employees was reasonable, we need not address the FLSA issues.

**5.** Bobich contends that Instruction 24 to the jury, which basically listed the *Jeffcoat* criteria, invited speculation by allowing the jury to consider factors other than the six enumerated ones. Although the instruction called upon the jury to "consider the following factors, *among others*," we think that the instruction simply directs the jury to apply the criteria in a nonme-

Storage, he cannot also be an employee of the partnership. Jury Instruction 25 permitted the jury, when deciding if Bobich was an employee, to consider a state regulation that gives employee status to certain corporate officers.[6] Because the regulation does not list partners as falling within its scope, Bobich argues that Instruction 25 is erroneous. The legal sufficiency of a jury instruction is a question of law, on which we will exercise our independent judgment. *Beck v. State, Dep't of Transp. & Pub. Facilities,* 837 P.2d 105, 114 (Alaska 1992). We hold that Instruction 25 was proper.

· ■ The regulation at issue reflects the general rule that shareholders are the owners of a corporation, and that the officers, whom the shareholders hire to manage the enterprise, are employees. *See* AS 10.06.-010(11). In comparison, partners in a partnership, like shareholders in a corporation, co-own the venture. *See* AS 32.05.010(a). As a rule, a partner receives nothing for her investment but a share of the profits, and receives no compensation for any work she does for the venture. *See* AS 32.05.-130(1), (6). Thus a partner normally would be more akin to a shareholder than to a corporate officer, and would not fall within the scope of the regulation.

On the other hand, a partnership agreement may provide regular compensation, untied to profits, for a partner's services. Under these circumstances, a partner looks less like a shareholder and more like a salaried corporate officer. Therefore, for the purposes of AS 23.10.060(d)(1), we shall consider such a compensated partner to be both an owner and an employee. To do otherwise would permit employers to defeat the AWHA's remedial purposes by simply calling paid employees "partners."

chanistic fashion, and is not an invitation for the jurors to engage in unbridled speculation.

**6.** When counting the number of employees working for an employer, "all officers of a cor-

Therefore, Instruction 25 to the jury was proper.

**C. The Award of Prejudgment Interest**

The judgment awarded the Stewarts a sum for unpaid overtime wages, an equal sum in liquidated damages as AS 23.10.-110(a) directs, and a sum representing prejudgment interest on the unpaid wages alone. Bobich argues that liquidated damages are meant to substitute for prejudgment interest, and that to award both amounts to giving the Stewarts a double recovery. The Stewarts, in contrast, argue that the trial court should have awarded prejudgment interest for not only the unpaid overtime but also the liquidated damages.

■ When awarding prejudgment interest, a court does not intend to penalize the losing party, but rather intends to compensate the prevailing party for losing the use of her money between the date she was entitled to it and the date of judgment. *Bevins v. Peoples Bank & Trust Co.,* 671 P.2d 875, 881 (Alaska 1983). Accordingly, prejudgment interest is generally not awarded on punitive damages. *Andersen v. Edwards,* 625 P.2d 282, 289 (Alaska 1981). However, where an award consists of both compensatory and punitive elements, to fail to award prejudgment interest on the compensatory portion would be unfair to the injured party. *Id.*

■ An employer who violates the AWHA must pay two types of damages: compensatory damages in the amount of unpaid overtime compensation, and liquidated damages in the same amount. AS 23.10.110(a) (1990). We have held that under the AWHA, liquidated damages are a form of punitive damages, not a substitute for compensatory damages. *Gore v. Schlumberger Ltd.,* 703 P.2d 1165, 1166

poration who actively engage in the business ... will be counted regardless of the number of days and hours worked." 8 AAC 15.140 (1991).

(Alaska 1985).[7] Because a plaintiff has no right to use liquidated damages before they are actually awarded, an award of prejudgment interest would compensate her for a nonexistent loss. Therefore, we hold as a matter of public policy that under the AWHA, an employee may not recover prejudgment interest for liquidated damages.

In this case, the trial court limited prejudgment interest to the compensatory part of the award. Dimond Mini–Storage denied the Stewarts not only their overtime pay but the right to use this money. The award of prejudgment interest thus made the Stewarts whole, compensating them for this additional loss. The trial court was correct to award this sum.

## D. The Award of Attorney's Fees

The Stewarts also moved for an award of $67,972.50 in attorney's fees as per AS 23.10.110(c) and Civil Rule 82. Over Bobich's objections, the trial court awarded the Stewarts $52,068 in attorney's fees. The trial court arrived at this figure by concluding that the Stewarts' attorney worked 423.9 hours, plus an additional 10 hours for the work involved in making the motion for attorney's fees, and that a reasonable rate for his time was $120 per hour, rather than the $135 per hour that the attorney wanted.

 In an action under the AWHA, the court "shall, in addition to a judgment awarded to the plaintiff, allow costs of the action and reasonable attorney fees to be paid by the defendant." AS 23.10.110(c) (1990). Alaska Civil Rule 82 sets up a schedule of attorney's fees, which is followed "unless the court, in its discretion, otherwise directs." Alaska R.Civ.P. 82(a)(1). An award of attorney's fees will be overturned only when the trial court's award is manifestly unreasonable and a clear abuse of discretion. *Municipality of Anchorage v. Baugh Constr. & Eng'g Co.*, 722 P.2d 919, 929 (Alaska 1986). On the one hand, because Rule 82 is intended to compensate prevailing parties only partially, rather than fully, for attorney's fees, an award of full attorney's fees is manifestly unreasonable, unless the losing party acted in bad faith or engaged in vexatious conduct. *Demoski v. New*, 737 P.2d 780, 788 (Alaska 1987). On the other hand, when interpreting a state statute that expressly calls for an award of reasonable attorney's fees to successful plaintiffs, we have held that full fees should be awarded to claimants as long as those fees are reasonable. *See Boyd v. Rosson*, 713 P.2d 800, 802 (Alaska 1986) (interpreting AS 34.35.005(b), which requires the court to allow successful lien claimants a reasonable attorney fee for foreclosure of a lien), *modified on reh'g*, 727 P.2d 765 (Alaska 1986); *cf. Ferdinand v. City of Fairbanks*, 599 P.2d 122, 125 (Alaska 1979) (holding that Rule 82 did not apply to an award of attorney's fees under the federal civil rights statute). When awarding attorney's fees, the trial court expressly relied on the *Boyd* holding.

In this case, the logic of *Boyd* and *Ferdinand* control. A state statute, AS 23.10.-110(c), expressly requires an award of reasonable attorney's fees to the plaintiff. We would have preferred that the trial court provide a more detailed explanation of its attorney fee calculations, but the award itself is fair and reasonable.[8] There-

---

**7.** Bobich urges this court to adopt the logic of *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), in which the U.S. Supreme Court, interpreting the FLSA, held that Congress had in fact intended liquidated damages to substitute for prejudgment interest. *Id.* at 715, 65 S.Ct. at 906. Therefore, where the trial court awarded both prejudgment interest and liquidated damages, the Supreme Court overturned the interest part of the award as a double recovery. *Id.* We have not chosen to read the AWHA in the same way as the U.S. Supreme Court has read the federal act. *See, e.g., McKeown v. Kinney Shoe Corp.*, 820 P.2d 1068, 1070 (Alaska 1991); *Gore*, 703 P.2d at 1166.

**8.** On cross-appeal, the Stewarts argue that the trial court erred in not granting them actual attorney fees, presumably as the Stewarts' attorney calculated, and a multiplier. Such an argument has little substance, because the AWHA

fore, the trial court's award was not an abuse of discretion.[9]

## III. CONCLUSION

We sustain the jury verdict in favor of the Stewarts, and conclude that the trial court properly denied Bobich's motions for a directed verdict and a judgment notwithstanding the verdict. We also conclude that Instruction 25 to the jury was not erroneous. The trial court acted properly when it awarded prejudgment interest on the compensatory award, but declined to do so on the liquidated damages. Finally, the trial court's award of attorney's fees did not constitute an abuse of discretion, and is therefore upheld.

Accordingly, the judgment is AFFIRMED.

does not require that the trial judge use a multiplier. Therefore, the Stewarts cannot show any manifest abuse of discretion on the part of the trial court, and the award is proper.

9. Bobich argues that because AS 23.10.110(c) awards attorney's fees to the plaintiff, but not the defendant, and because, allegedly, this rule lacks a rational basis, the provision thus violates the U.S. Constitution's Equal Protection Clause. *See* U.S. Const. amend. XIV. This logic is faulty. The objective of AS 23.10.110, as Bobich himself understands it, is to encourage employees to press wage-and-hour claims. Essentially, Bobich's argument is not that the provision for attorney's fees is in itself an irrational means of achieving that goal, but that other provisions in the statute also achieve that goal. This position, however, is not sustainable as an argument against the law's reasonableness. The effectiveness of other statutory provisions in achieving an objective does not render one particular provision irrational.